FILED

APR 25 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 11-19408-B-11 |
| | ) | |
| Salvador Padilla and | ) | DC No. TOG-1 |
| Maria Lopez, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM DECISION REGARDING DEBTORS'
MOTION TO VALUE COLLATERAL OF DEUTSCHE BANK
TRUST COMPANY AMERICAS AS TRUSTEE FOR RALI 2005QA4**

Thomas O. Gillis, Esq., appeared on behalf of the debtors, Salvador Padilla and Maria Lopez.

Bryan Fairman, Esq., appeared on behalf of Deutsche Bank Trust Company Americas as Trustee for Rali 2005QA4.

Before the court is a motion by the debtors, Salvador Padilla and Maria Lopez (the "Debtors") to value the collateral of Deutsche Bank Trust Company Americas as Trustee for RALI 2005QA4 ("Deutsche Bank").[1]  Deutsche Bank holds the first priority trust

---

[1]The proof of claim for this secured obligation states that the debt is owed to Deutsche Bank Trust Company Americas as Trustee for RALI 2005QA4.  GMAC Mortgage, LLC, is listed as the party to which notices should be sent.  Apparently, GMAC Mortgage, LLC, is the servicer of the loan.  The motion named GMAC Mortgage as the respondent and was served on GMAC Mortgage.  However, the responsive opposition and subsequent pleadings were filed by Deutsche Bank.

130

deed against a parcel of real property located in Winton, California (the "Property"). The

Property is described in the Debtors' schedules as a residential rental property. The

Debtors contend that the fair market value of the Property is $275,000. Deutsche Bank

objects to the motion based on its contention that the value of the Property is much

higher, $370,000. The Debtors and Deutsche Bank offered competing appraisals

prepared by competent and experienced appraisers. However, the appraisers took

significantly different approaches to determine their proffered values. For the reasons set

forth below, the Debtors' motion will be granted.

This memorandum decision contains the court's findings of fact and conclusions

of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has

jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 506[2] and General

Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This

is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (L).

**BACKGROUND AND FINDINGS OF FACT.**

The Property is encumbered by two mortgage liens. The first trust deed is held by

Deutsche Bank. Deutsche Bank filed a secured proof of claim in the amount of

$383,291.57. It stated in the proof of claim that the value of the Property was sufficient

to fully secure the claim. It now acknowledges that the Property is worth less than its

claim. The second priority lien is held by Bank of America, N.A. Bank of America did

not respond to the Debtors' motion to value the Property and the court has already ruled,

based on the evidence presented in this matter, that Bank of America's claim is wholly

unsecured for purposes of its treatment in the Debtors' chapter 11 plan. The purpose of

---

[2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

1  this motion is to determine the amount of Deutsche Bank's secured claim for "cramdown"
2  treatment in the chapter 11 plan, with the balance to be treated as an unsecured claim.

3      The Debtors contend that the Property has a fair market value of $275,000.  In
4  support of this value, they offered an appraisal prepared by John Friend ("Mr. Friend"),
5  an experienced and licensed real estate appraiser who specializes in appraising residential
6  properties in Merced County.  He has been doing that for about twelve years.  Conversely,
7  Deutsche Bank contends that the Property has a fair market value of $370,000.  Deutsche
8  Bank offered the appraisal and testimony of Carolyn Breeding ("Ms. Breeding"), also a
9  licensed and experienced real estate appraiser, who specializes in the appraisal of
10  residential properties, primarily for lending institutions.  Ms. Breeding has been
11  appraising properties in Merced County for about 18 years.

12      Both experts generally agreed on their description of the Property.  The Property is
13  situated in an unincorporated portion of Merced County, near the town of Winton.  Ms.
14  Breeding described the location as "rural in nature, but suburban in location."  The
15  Property is surrounded by smaller, older houses and agricultural land, but it is near
16  enough to the town to enjoy its attendant facilities, including schools, shopping and
17  "community services."  The Property comprises approximately one acre of land.  The
18  primary structure on the Property is a large residence which is about 2,450 square feet in
19  size.  The residential structure is about eight-years-old.  It has eight rooms, including four
20  bedrooms and two and one-half bathrooms and a three-car garage.  The structure has a
21  large front yard.  However, behind the main structure, are a smaller, older unattached
22  guest house and two remote workshops, all in good condition.  Both sides agree that the
23  Property is "unique," meaning that the primary residential structure is similar in size and
24  quality to homes normally found in more exclusive residential developments, but it is
25  surrounded by smaller, older dissimilar homes and agricultural land.  The existence of the
26  guest house and the two shop buildings gives the Property a more "industrial" quality.

27      The expert testimony and evidence on both sides were excellent.  However, the
28  appraisers utilized two distinctly different methodologies to arrive at their respective

3

1    opinions.  The court must decide which of those methods is more and likely to yield the
2    result that is appropriate in the context of this motion.  In relative terms, the parties are
3    substantially far apart in their respective opinions of value.  The court must choose, based
4    on the evidence presented, between one of the suggested values.  There is no evidence or
5    "sliding scale" formula upon which the court can arrive at a "middle ground" value.
6    **ANALYSIS AND CONCLUSIONS OF LAW.**
7        The Debtors seek to value Deutsche Bank's interest in the Property based on
8    § 506(a)(1), which states:
9            An allowed claim of a creditor secured by a lien on property in
             which the estate has an interest . . . is a secured claim to the extent of
10           the value of such creditor's interest in the estate's interest in such
             property . . . and is an unsecured claim to the extent that the value of
11           such creditor's interest . . . is less than the amount of such allowed
             claim.  *Such value shall be determined in light of the purpose of the*
12           *valuation and of the proposed disposition or use of such property,*
             *and in conjunction with any hearing on such disposition or use or on*
13           *a plan affecting such creditor's interest.*  (Emphasis added.)
14       When the debtors intend to occupy their house, the proper valuation of the house
15   under § 506(a) is the fair market value ("FMV").  *Taffi v. United States of America (In re*
16   *Taffi)*, 96 F.3d, 1190, 1192 (9th Cir. 1996).  The FMV is not the "replacement" value
17   because the house is not replaced.  Neither is it the "foreclosure" value because no
18   foreclosure is intended in the chapter 11 plan.  *Id.*  The FMV is "the price which a willing
19   seller under no compulsion to sell and a willing buyer under no compulsion to buy would
20   agree upon after the property has been exposed to the market for a reasonable time."  *Id.*
21       The debtor bears the initial burden of proof of overcoming any presumption
22   established by the stated value in the secured creditor's proof of claim.  However, the
23   secured creditor has the ultimate burden of persuasion to demonstrate by a preponderance
24   of the evidence the value of the collateral which secures its claim.  *In re Southmark*
25   *Storage Associates Ltd. Partnership*, 130 B.R. 9, 10 (Bankr. D.Conn. 1991).
26       When the debtor plans to retain the real property, selling costs should not be
27   deducted from the FMV when valuing a creditor's interest in the property.  *In re Taffi,*
28   *supra*, 96 F.3d at 1192.  (Hypothetical selling costs are not considered when no sale is

4

1  intended.); *See also United States Farmers Home Administration v. Case (In re Case)*,

2  115 B.R. 666, 670 (9th Cir. BAP 1990) (closing costs should not be deducted when

3  valuing real property under § 506(a) for purposes of chapter 12 plan confirmation).

4       The Debtors are currently renting the Property and intend to keep it occupied as a

5  rental.  They have the option in chapter 11 to sell or surrender the Property; however,

6  their chapter 11 plan will propose to retain the Property and amortize Deutsche Bank's

7  claim over a period of time.  The "purpose of the valuation" and the "proposed

8  disposition or use" of the Property is to determine its value as a tenant-occupied property.

9  § 506(a)(1).

10      Here, both expert witnesses used a "direct sales" method to value the Property, *i.e.*,

11 they used actual sales of comparable properties, or "comps" as the starting point for

12 determining the value of the Property.  Both appraisers estimated adjustments to the value

13 of their comps to reflect the physical differences between the comps and the Property.  It

14 is at this point that the appraisal methods differed.  Ms. Breeding's appraisals were based

15 on six comps from residential developments located in other parts of Merced County.

16 The nearest comp used by Ms. Breeding was 4.9 miles away from the Property.  The

17 farthest comp was 17.5 miles.  Ms. Breeding's comps ranged in size from 1.0 acres to 9.9

18 acres and they ranged in value, based on the comp's "sales price" from $330,000 to

19 $649,000.  Mr. Friend described two of Ms. Breeding's comps as "estate lots," meaning

20 that they are located in residential developments, nicely landscaped, would tend to attract

21 higher income occupants, and do not have the shop buildings that give the Property a

22 more "industrial" quality.  As to Ms. Breeding's other four comps, Mr. Friend expressed

23 his view that they were too large and too costly to qualify as "comparable properties."  In

24 other words, Mr. Friend opined that the larger more expensive properties would not

25 attract the same group of "willing buyers."  Ms. Breeding testified that she likes to use

26 comps with both higher and lower values than the property she is trying to appraise and

27 then make upward or downward adjustments to arrive at the result.  She referred to this

28 process as "bracketing" and believes it yields a better result.

1    In contrast, Mr. Friend's appraisal was based on five comps located around the
2  Property at distances ranging from 2.0 miles to 9.5 miles.  Both experts agreed there were
3  no similar comps in the immediate Winton area.  Mr. Friend's comps ranged in size from
4  0.7 acres to 1.5 acres and in value from $189,000 to $245,000.  Ms. Breeding disagreed
5  with Mr. Friend's use of lower value "inferior" comps and argued in favor of the
6  "bracketing" approach.  Mr. Friend believed that his comps more closely resembled the
7  Property in size and character and that his method yields a better indication of what a
8  "willing buyer" might pay for the subject Property.  Mr. Friend did not select comps from
9  residential developments and testified persuasively that the "industrial" character of the
10  Property would not attract the same kind of buyer as would a property located in a large,
11  well-landscaped residential development, even though the residential structures
12  themselves might be similar.
13    Faced with the choice between the two appraisals, and based on the expert's
14  explanation of their appraisal methods, the court is persuaded that Mr. Friend's appraisal
15  more accurately reflects the Property's fair market value for the purpose to which the
16  Property will be used under the Debtors' chapter 11 plan, a tenant-occupied rural rental.
17  Ms. Breeding's comps would appeal to "willing buyers" with higher incomes who seek
18  the benefits of a rural lifestyle on a large well-landscaped lot.  Mr. Friend's selection of
19  comps more closely reflects the character of the Property itself.  He testified that the
20  presence of the shop buildings and the guest house on the Property would not appeal to
21  the same kind of buyer as would the homes listed in Mr. Breeding's appraisal.  When Ms.
22  Breeding was asked in cross-examination why she chose comps from "posh
23  subdivisions," she was not able to give a persuasive answer.
24    Deutsche Bank argues that Ms. Breeding's method of selecting comps is consistent
25  with established appraisal standards within the lending industry, but the court is not being
26  asked to value the Property for the purposes of securing a new loan.  In light of the
27  "willing buyer" test, which the court must apply, it is not clear how "lending industry
28  standards" are applicable to this dispute.  The Debtors argue that Mr. Friend's comps are

6

1   more similar in character and location to the Property, that his analysis is based more on

2   "market driven" factors, and that his appraisal better reflects the price a "willing buyer"

3   would actually pay for the Property.  The court agrees.

4   **CONCLUSION.**

5        Based on the foregoing, the court is persuaded that the Debtors' appraisal more

6   accurately reflects the value of the Property in light of the purpose of the valuation and

7   the proposed use of the Property.  Accordingly, the court finds that the fair market value

8   of the Property is $275,000.  Deutsche Bank's secured claim will be fixed at $275,000 for

9   the purpose of its treatment in the Debtors' chapter 11 plan.  The balance of the claim

10  may be treated as wholly unsecured.

11       Dated: April _25_, 2012

12

13

14                                          W. Richard Lee
                                            United States Bankruptcy Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Salvador Padilla & Maria Lopez, Case No. 11-19408-B-11/DC No. TOG-1

Salvador Padilla
Maria Lopez
447 Drakeley Ave.
Atwater, CA 95301

Thomas O. Gillis, Esq.
Attorney at Law
1006 H St., #1
Modesto, CA 95354

Christopher M. McDermott, Esq.
Balpreet K. Thiara, Esq.
Attorneys at Law
4375 Jutland Dr., #200
P.O. Box 17933
San Diego, CA 92177-0933

Bryan Fairman, Esq.
Attorney at Law
921 11th St., Ste. 300
Sacramento, CA 95814

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721